J. W. ELDRIDGE, Appellant v. EDWARD FUHR et al., Appellants.

St. Louis Court of Appeals, October 9, 1894.

1. **Building Contract**: PRINCIPAL AND SURETY. A surety for a contractor for the erection of a building will be discharged by a material variation in the work without his consent, when the contract for the building authorizes variations in the work but prescribes conditions in regard thereto which are not observed; as when the contract requires a written order for variations which are made on oral directions.

2. ———: CLAIM OF CONTRACTOR FOR EXTRAS. The contractor for the erection of the building will not be entitled to compensation for extras furnished by him, when the conditions of the contract in reference thereto have not been complied with.

3. ———: LIQUIDATED DAMAGES FOR NONCOMPLETION OF BUILDING IN TIME. The owner will not be entitled to liquidated damages under the provisions of the contract for the noncompletion of the building within a stipulated time, when he has failed to comply with a condition requiring him to deliver the possession of the premises to the contractor on or before a stated date.

4. ———: CONCLUSIVENESS OF CERTIFICATE OF ARCHITECT. A provision in a building contract is valid which is to the effect that, in case of the failure of the contractor to perform his agreements, the architect shall audit and certify the consequent expense incurred by and damages caused to the owner, and that the architect's certificate shall be conclusive; nor need the architect give notice to the parties of his intended assessment of the damages so as to afford them a hearing, when the contract contains no such requirement.

5. ———: ———. The architect's certificate under such provision can be overcome by proof, that it is the result of caprice or malice and is without foundation; but the party who attacks it has the burden of showing this.

*Appeal from the Greene Circuit Court.*—HON. J. T. NEVILLE, Judge.

REVERSED AND REMANDED.

*Wolf & Bowden* and *Lane & Walker* for defendants.

(1) When a party sues upon a contract, he must show that the contract was followed, its terms were kept, and that he was not at fault. The plaintiff committed a breach of this contract by failing to deliver the building ground at the proper date, with lines and levels, as well as in many other respects shown by the evidence; hence he can not recover in this action by declaring upon the contract. *Lanitz v. King*, 93 Mo. 513; *Henning v. Ins. Co.*, 47 Mo. 425; *Nichols v. Larkin*, 79 Mo. 265; *Harrison v. Railroad*, 50 Mo. App. 332; Bishop on Contracts, sec. 1422. (2) An action will not lie against the bondsmen in this case. The contract was changed in many respects without their consent, extras were added and a different kind of brick was used than that called for in the contract, all of which increased the cost of the building and changed the liability of the bondsmen. This will discharge the sureties. *Nofsinger v. Hartnett*, 84 Mo. 549; *Bricker v. Stone*, 47 Mo. App. 530; *Prior v. Kiso*, 81 Mo. 241; *Paine v. Jones*, 73 N. Y. 274; 3 Am. and Eng. Encyclopedia of Law, 891; 9 Am. and Eng. Encyclopedia of Law, 83; *Farrar v. Kramer*, 5 Mo. App. 167. (3) It was error on the part of the trial court to admit in evidence the certificate of W. E. Foley, architect. After the contract had been changed, no such estimates could be made; and even if the contract had not been changed, the estimate was not made in accordance with the contract, and is insufficient. *Fitzgerald v. Beers*, 31 Mo. App. 356; *Roy v. Boteler*, 40 Mo. App. 213.

*Sebree & Tatlow* for plaintiff.

BIGGS, J.—This is an action on a contractor's bond. The defendant Fuhr entered entered into a written contract with the plaintiff, in which he agreed to furnish the materials and do the work (except excavation for foundation walls and cellar) in the construction of a brick building. The contract price was $4,000, to be paid in installments as the work progressed, except the last payment of $500 which was not to be paid until the completion of the building, according to contract. To secure the plaintiff in the faithful performance of this contract the defendant Fuhr as principal, and his codefendants as sureties, executed and delivered the bond in suit.

The petition sets forth in three counts various alleged breaches of the bond. In the first count it was charged that Fuhr had failed in several particulars to construct the building in conformity with the contract and specifications; in the second, that he had failed to complete the building within the time prescribed; and in the third, that he had failed to deliver the building free of all liens and claims. The aggregate amount of damage claimed is $1,823.02, less the sum of $500, balance of contract price.

The sureties filed a separate answer, in which, among other things, they alleged that the original contract had in several particulars been materially changed without their knowledge and consent, and that by reason thereof they were released from their obligation. The separate answer of Fuhr was a general denial. It also contained averments as to the changes or alterations alleged in the answer of the sureties, and, in addition, set forth a counterclaim for $608.40, the value of extra work resulting from changes alleged to have been ordered by the plaintiff in the original plans. For that

amount, and the said sum of $500 due under the original contract, a judgment was asked.

In the replication the plaintiff admitted that by his consent and direction the original contract had been departed from by adding two extra doors, the construction of a skylight, and the use of three barrels of cement, of the total value of $52.70. For this amount it was conceded that Fuhr was entitled to credit. All other new or affirmative matter in both answers was denied.

At the conclusion of 'the evidence the court on its own motion instructed the jury as follows: "The court instructs the jury that under the law, pleadings, admissions and evidence in the case, the plaintiff is not entitled to recover on the first and second counts in his petition; and that on the third count plaintiff is entitled to recover the amount paid out by him in excess of the contract price, less the $52.70 admitted in the plaintiff's replication to be an offset in favor of the defendants, with six per cent. per annum interest thereon from March 31, 1893." Under this instruction the jury returned a verdict for the plaintiff for $509, upon which judgment was entered. All parties filed motions for new trial, and all have appealed.

As we are of opinion that, under the conceded facts, the judgment as to the sureties must be reversed, we will dispose of that matter first.

Section 3 of the contract reads: "Should any alteration be required in the work, as described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architect, and the sum herein agreed to be paid for the work according to the original specifications shall be increased or diminished as the case may be. In case such a valuation is not agreed to, the contractor shall proceed with the alteration upon the written order of

the owner, and the valuation of the work added or omitted shall be referred to three (3) arbitrators (no one of whom shall be personally connected with the work to which these presents refer), to be appointed as follows: One by each of the parties to this contract and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expenses of such reference.'' The specifications, which are expressly made a part of the contract, contain the following: ''The owner reserves the right  *  *  *  to order, through the architect, any change in the work without impairing the contract, the value of such changes to be mutually agreed on in writing between the architect and contractor beforehand. In default of such agreement, the architect will fix such valuations.''

The plaintiff, in his replication and testimony, admitted that the door and skylight had been added on his verbal order, and that the three barrels of cement were not included in the contract, and that, under the decision of the architect beforehand, he agreed to pay for the same as extra materials. It was conceded by the plaintiff that neither he nor the architect had agreed with Fuhr as to the cost of the extras, and that the architect had not fixed or attempted to fix the cost thereof. By the express terms of the contract, the plaintiff reserved the right, by the observance of certain formalities, to order changes in the building. If these formalities had been observed, it is clear that the original contract would have been in no way changed, and the sureties would have remained bound. But it is undisputed that, in ordering the additions, the contract was disregarded. Did this release the sureties? Let us examine the question in the light of recent adjudications in this state.

In the recent case of *Beers v. Wolf*, 116 Mo. 179,

the supreme court had under consideration the same question, which arose under a similar state of facts. There the building contract contained the following clauses: "The superintendent shall be at liberty to make any deviation from, or alteration in, the plan, form, construction, detail and execution described by the drawings and specifications, without invalidating or rendering void this contract, and, in case of any difference in the expense, an addition to or abatement from the contract price shall be made, and the same shall be determined by the architect; and in case any such alteration or change shall be made or directed by the said superintendent as aforesaid in the plans, drawings and construction of the aforesaid building, and in case of any omission or addition to said building being required by said superintendent, the cost and expense thereof is to be agreed upon in writing, and such agreement is to be signed by said parties of the second part and superintendent before the same is done, or before any allowance therefor can be claimed; and, in case of any failure to so agree, the same shall be completed on the original plan." It appeared that various changes had been made in the work, but that, in making the changes, the conditions of the contract had not been observed, and there was no evidence that the sureties consented to the changes. The court held that the sureties were released.

In the case of *Killoren v. Meehan,* 55 Mo. App. 427, we had the same question under consideration. The building contract in that case contained the following clause: "The superintendent shall be at liberty to make any deviation from, or alteration in, the plan, form, construction, detail and execution described by the drawings and specifications, without invalidating or rendering void this contract, and in case of any dif-

ference in the expense, an addition to, or abatement
from, the contract price shall be made, and the same
shall be determined by the architect; and, in case any
such alteration or change shall be made or directed by
said superintendent as aforesaid, in the plans, draw-
ings and construction of the aforesaid buildings, and
in case of any omission or addition to said buildings
being required by said superintendent, the cost and
expense thereof is to be agreed upon in writing, and
such agreement is to be signed by said parties of the
second part (Meehan and Creageu) and superintend-
ent before the same is done or before any allowance
therefor can be claimed, and, in case of any failure to
so agree, the same shall be completed upon the original
plan.'' In that case the evidence was conflicting as to
the facts attending the alterations and additions to the
work. We decided that, if the changes were made
under the contract, and the conditions had not been
complied with, the surety could not be held. The fore-
going decisions rest on the principle of law, which is
universal, that a surety has a right to stand upon the
strict letter of his contract.

In the case at bar, the additions to the work were
made *solely* on the *verbal* order of plaintiff. This was
in direct violation of the conditions of the very con-
tract for the performance of which the sureties were
bound. As the alterations were made without the con-
sent of the sureties, it follows that they are released.

In reference to the counterclaim of the defendant
Fuhr, the judgment of the circuit court will be sus-
tained. The evidence in support of it merely shows
that certain extras were furnished, without showing
that the conditions of the contract in reference thereto
had been complied with.

It is also urged that the action is brought on the
theory that the contract was carried out as made, where-

as the evidence showed that the work was performed under a modified agreement, and that, therefore, the principle that a party can not sue upon one cause of action, and recover upon another, has been violated. The principle as stated is a correct one, but it has no application here. It is not pretended by Fuhr that the extras were furnished under an independent agreement apart from the original contract. On the contrary, the evidence for the defendants shows that the extra work was done in view of the original contract, and with the consent of the plaintiff. As the original contract provided for additions and alterations, and as the testimony of Fuhr will not admit of the construction that the performance of the extra work was the result of an independent agreement which would form a distinct matter of settlement (*Bruns v. Braun*, 35 Mo. App. 337), there is, we think, no merit in the objection. Under this view the original contract was in no way impaired or changed as to Fuhr and the plaintiff.

We will now consider the matters complained of by the plaintiff. The second count in the petition was for damages for failure to deliver the house within the time prescribed in the contract. The court by its instruction directed a verdict for the defendants on this count. In this we think the court was right. This claim for damages is based on the following section of the contract: "The contractor shall and will proceed with the said work * * * and shall and will wholly finish the said work * * * on or before the thirteenth day of June, 1892 (provided that the possession of the premises be given the contractor, and lines and levels furnished him, on or before the ninth day of April, in the year one thousand, eight hundred and ninety-two), and in default thereof the contractor shall pay to the owner two dollars and fifty cents ($2.50), for every day thereafter that the said work shall

remain unfinished, as and for liquidated damages."
The plaintiff admitted that he did not deliver possession
of the premises to Fuhr until April 20. This admission
defeated the claim.

The plaintiff complains chiefly of the refusal of the
court to submit his claim for damages under the
first count. Section 12 of the contract provides:
"Should the contractor neglect to supply sufficient
materials of the proper quality, or fail in any respect to
prosecute the work with promptness and diligence, or
fail in the performance of any of the agreements on his
part herein contained, * * * the expense incurred
by the owner as herein provided either for furnishing
the materials or for furnishing the work, *and any dam-
ages incurred through such default, shall be audited and
certified by the architect, whose certificate thereon shall
be conclusive upon the parties.*"

The petition, after stating the particulars in which
the defendant Fuhr had failed to complete the building
as per contract, contained the further allegation that
the architect had certified in writing that the building
had not, in the particulars, named been completed
according to the contract, and that the difference
between the value of the work as done, and the way
and manner in which the same was to be done under
the contract, was the sum of $623.77. In answer to
this the defendant Fuhr denied that the work had not
been completed according to contract, and he averred
that the architect, in making the certificate, acted mali-
ciously and capriciously and without cause. The plain-
tiff read in evidence a certificate given by the architect,
in which he stated in what respects the work done did
not comply with the specifications, and that it would
require $626.37 to remodel and complete the building
according to the contract. The testimony of the arch-
itect was also taken, which substantially corroborated

the certificate.   He also stated that Fuhr had notice of the defects complained of before the certificate was made, and upon request had failed and refused to remedy them.   He admitted, however, that Fuhr had no notice that he intended to estimate the damages. We can not with any degree of certainty determine why the circuit court, after admitting the certificate and the testimony of the architect in support of it, nonsuited the plaintiff on this breach of the bond.   The stipulation, that the certificate and judgment of the architect in respect of the matters stated should be conclusive, is quite usual in building contracts, and its binding force is recognized by all the courts.   *Williams v. Railroad, Co.*, 112 Mo. 463; *Dinsmore v. Livingston County*, 60 Mo. 241; *Neenan v. Donoghue*, 50 Mo. 495.   These causes, however, hold that if the rejection of the work or the assessment of the damage arises from caprice or malice and is without foundation, the certificate will be invalidated.   This, however, would be a matter of defense.   Under these authorities we can not understand the ruling on this branch of the case, unless the court was of the opinion that Fuhr ought to have had notice that the architect intended to act in the matter. The failure to give Fuhr an opportunity to be heard on the *quantum* of damage, or as to the non-fulfillment of the contract, would not authorize the court to declare as a matter of law that the certificate was invalid, since the contract did not provide for such notice.

Our conclusion on the whole case is that under the conceded facts the sureties are released and the judgment as to them must be reversed.   As to the plaintiff and Fuhr the judgment will be reversed and the cause remanded, to be proceeded with in conformity to this opinion.   All the judges concur.